**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

THE ALDER AT LAKE PARK, LLC,

Plaintiff,

v.

TOWN OF LAKE PARK,

Defendant.

Case No.

**COMPLAINT**

Plaintiff The Alder at Lake Park, LLC ("Alder" or "Plaintiff") brings this Complaint against Defendant Town of Lake Park (the "Town" or "Defendants") and respectfully alleges as follows:

**THE PARTIES**

1. Plaintiff Alder is a limited liability company whose sole member is Hashkaot, LLC, a Virginia limited liability company, whose sole managing member is Daniel Goldstein, who is domiciled in the State of New York. Because Mr. Goldstein is a New York domiciliary, Alder is as well.

2. Defendant Town of Lake Park (the "Town") is a municipality located in Palm Beach County, Florida. The Town is a Florida domiciliary.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between Plaintiff and Defendant.

4. Jurisdiction and venue are proper in the Southern District of Florida's West Palm

Beach Division because the properties at issue are located in Lake Park, Palm Beach County, Florida.

## GENERAL ALLEGATIONS

### A. The Properties & Alder's Investment-Backed Expectations

5. Alder owns and controls a downtown assemblage of seven contiguous parcels located at the intersection of Park Avenue and 10th Street in the Town of Lake Park, including the following parcels (referenced herein collectively as the "Properties"):

a. 918 Park Ave., Lake Park, Florida [Parcel ID 36-43-42-20-01-002-0080; Legal Description: KELSEY CITY LTS 8 TO 10 INC BLK 2 ]

b. 924 Park Ave., Lake Park, Florida [Parcel ID 36-43-42-20-01-002-0110; Legal Description: KELSEY CITY LTS 11 TO 13 INC BLK 2]

c. 935 Foresteria Dr., Lake Park, Florida [Parcel ID 36-43-42-20-01-002-0270; Legal Description: KELSEY CITY LT 27 /LESS N 25 FT/, LTS28 & 29 BLK 2]

d. No address (part of 935 Foresteria Dr., Lake Park, Florida) [Parcel ID 36-43-42-20-01-002-0300; Legal Description: KELSEY CITY LTS 30 TO 33 INC BLK 2]

e. 936 Park Ave., Lake Park, Florida [Parcel ID 36-43-42-20-01-002-0140; Legal Description: KELSEY CITY LTS 14 TO 18 INC BLK 2]

f. 940 Park Ave. Lake Park, Florida [Parcel ID 36-43-42-20-01-002-0190; Legal Description: KELSEY CITY LTS 19 TO 25 INC BLK 2]

g. Vacant Commercial Lot, Parcel ID 36-43-42-20-01-002-0340; Legal Description: KELSEY CITY LTS 34 & 35 BLK 2]




6. Alder acquired the Properties for the express purpose of developing a mixed-use, multifamily residential project known as "The Kelsey on Park Avenue" (the "Project").

7. The Properties lie within the Town's Park Avenue Downtown District ("PADD") and the Downtown Future Land Use classification, which the Town adopted to facilitate and encourage a dense, vibrant, walkable mixed-use downtown combining residences, businesses and civic spaces.

8. In reasonable reliance on the Town's land-use scheme, its stated goal of downtown redevelopment and upon the representations by Town officials, Alder assembled the Properties and retained architects, engineers and consultants to prepare and repeatedly revise detailed site plans and traffic, drainage, landscape and photometric studies. Alder committed to expenditures that would exceed $15 million.

9. Alder's expectation of developing a multifamily project on the Properties was reasonable, investment-backed and nonspeculative. The Town's comprehensive plan expressly authorizes the Town Commission to approve residential density above the 48-unit-per-acre base

figure as long as the district-wide average is maintained.

**B. The Town's Coercive Use of 918 Park Ave.**

10. In 2022, Alder began submitting applications for site-plan approval for the Project. During the process, the Town approached Alder and asked if it would consider purchasing 918 Park Ave.

11. The Town Manager represented to Alder that, if Alder purchased 918 Park Ave. (a dilapidated historically designated building) and incorporated it into the Project, the Town would allow Alder to make the building larger than originally planned.

12. When Alder expressed concerns about the historic designation of 918 Park Ave. and the complications/delays it would cause the Project, the Town assured Alder that, if Alder purchased and included 918 Park Ave., the approval procedure for the Project would be swift and completed with just a letter and architect's approval.

13. In reliance on the Town's representations, Alder purchased 918 Park Ave. and incorporated into the Project.

14. However, after 918 Park Ave. was purchased and the letter and architect approval submitted, the Project was denied and continues to be denied to this day.

15. Worse, the Town is now holding Alder responsible for the pre-existing dilapidated condition of 918 Park Ave. by assessing daily fines against Alder and subjecting the property to potential foreclosure if the fines are not paid by Alder.

16. Despite the Town's assurances that, if Alder purchased 918 Park Ave., the Project could be "bigger," Alder has been forced to resubmit applications for site-plan approval of the Project across multiple rounds of review, progressively reducing the Project from 720 units, then to 500 units and ultimately to 426 units to address the Town's objections.

17. In each round, Alder addressed and resolved the Town's stated review comments, and the Town acknowledged numerous items as “resolved.”

18. Notwithstanding Alder's compliance, the Town repeatedly imposed new, revised or escalated requirements as conditions of approval. By way of example and not limitation, after Alder provided a six-foot sidewalk as requested, the Town demanded a ten-foot sidewalk; after Alder redesigned the building into two towers to address the Town's massing objections, the Town demanded still further massing revisions; and, late in the process, the Town injected a new lift-station requirement that, by the Town's own admission, "may delay final approval" of the Project.

19. Throughout the process, the Town expressly reserved the right to revise its requirements without limit, writing its comments were "not intended to be exhaustive or complete, and should not be relied upon as final," and that the Town "reserves the right to revise these comments and requests, at any time . . . until final approval of the Application by the Town Commission."

20. The cumulative effect of the Town's conduct — years of shifting, escalating and moving-target requirements, coupled with the Town's refusal to approve any economically viable configuration of the Project — has directly restricted and limited the use of the Properties and deprived Alder of all reasonable, investment-backed use of the Properties for its intended and permitted purpose.

21. On August 17, 2026, the Town’s planner testified at a code enforcement hearing that Alder’s most recent application was rejected by the Town as a “no go.” As such, despite the token non-final language in the Town’s written rejection of Alder’s application, the final decision by the Town was a denial of the Project.

### C. **The Town's Coercive Use of Code Violations.**

22. While the Town has continued to deny the redevelopment Project, on or about March 31, 2026, the Lake Park Town Attorney (hereinafter the "Town Attorney") met with Alder's representatives and represented to Daniel Goldstein, Ben Diehl and Glen Spiritis ("Alder's Representatives") that he knows people and could arrange a sale that would make all of the issues go away.

23. The Town Attorney made it clear to Alder's Representatives that he was opposed to the Project and would prevent its approval, stating he would "never let Alder build what it wants" and would "just deny applications."

24. The Town Attorney sought to force Alder to transfer the Properties to a developer of his choosing. The Town Attorney told Alder's principal that if "his team" were used to develop the Properties, "all problems would go away." Alder later learned that the Town Attorney had lined up another developer who wanted to buy the Properties.

25. Just a few days after the March 31, 2026 meeting with the Town Attorney, and after Alder refused to sell the Properties to the Town Attorney's preferred local developer, the Town Attorney sent a Code Enforcement Officer Gianfranco Pinto (hereinafter "Officer Pinto," acting on behalf of the Town) to the Properties with the purpose and intent to use the code violation process to coerce, intimidate and force Alder to sell the Properties.

26. At the Town Attorney's direction and instigation, Officer Pinto issued approximately 214 pages of code-enforcement notices against the Properties, totaling roughly 34 alleged code violations. *See* Code Violations, attached hereto as Composite Exhibit 1.

27. At the code enforcement hearing on August 20, 2026, Officer Pinto testified he regularly drove past the Properties on his routine route but never issued code violations on the

Properties before. It was not until the days following the Town Attorney's meeting with Alder on March 31, 2026 that Officer Pinto suddenly decided to start issuing code citations on the Properties.

28. Officer Pinto further testified at the code enforcement hearing that, normally, when he decides to issue a code citation, he takes photographs to document the property condition. However, with respect to Alder's Properties, he failed to furnish Alder with a single photograph to support the 214 pages of code-enforcement notices he issued on the Properties.

29. The cited conditions (such as exterior paint and staining, signage, parking lot striping and fencing) had existed for years on the vacant buildings and had not previously been the subject of enforcement despite Officer Pinto's testimony that the Properties were a regular part of his "routine route."

30. The volume and timing of the code enforcement process were selective and not directed at achieving code compliance. The Town Attorney used this process, along with the threat of millions of dollars in potential remediation costs, to blackmail and coerce Alder into surrendering the Properties to the Town Attorney's preferred developer.

31. By mid-2026, the Town admitted to Alder it was withholding consent to develop the property at 918 Park Ave. as "leverage" against Alder to compel Alder to alter the Project specifications to meet the Town's subjective preferences.

32. The Town's conduct in issuing costly code violations to force remediation of 918 Park Ave. while consciously withholding permission to redevelop the structure (which would obviate the code violations in their entirety) is retaliatory and coercive, if not outright extortionary.

33. All conditions precedent to this civil action have been performed, waived or otherwise satisfied.

**COUNT I**
**PROMISSORY ESTOPPEL**

34. Plaintiff incorporates and realleges by reference the allegations of paragraphs 1 through 33 above as though fully set forth herein.

35. This is a cause of action for promissory estoppel.

36. Before and during Alder's acquisition and development of the Properties, the Town, acting through its officials and its adopted downtown-redevelopment policy, made representations with apparent authority that a multifamily residential development of the scale Alder proposed would be approved and could proceed on the Properties. Among other things, former Mayor Michael Rourke, as well as Town representatives Richard Reade and John D'Agostino (all three "Town Officials"), represented to Alder that, if Alder purchased and came forward to develop the land, it could build a residential project of approximately 500 units in the downtown area. The Town reinforced those representations by adopting and publicizing a Downtown Future Land Use classification and PADD zoning that authorized the density and use Alder sought, and by recognizing Alder's Project as the first of a number of anticipated residential and mixed use projects at the downtown gateway.

37. Specifically, the Town induced Alder to purchase the property located at 918 Park Ave. with the assurance that Alder's Project was suitable for development in the Town. In fact, the Town induced Alder to purchase the historical (albeit dilapidated) 918 Park Ave. building and include it in the Project, promising the approval procedure for the Project would be swift and completed with just a letter and architect approval.

38. On August 20, 2026, at a code enforcement hearing on the record, the Town Attorney admitted and acknowledged that the Town Manager made "a lot of promises to a lot of

people." The Town Attorney did not deny the promises the Town Manager made to Alder with respect to the Project.

39. Alder relied on the Town's representations and purchased 918 Park Ave. to expedite the Project's approval process so that Alder would be able to create a larger development project as promised by the Town.

40. However, after Alder purchased 918 Park Ave and complied with the letter and architectural approval submission requirements, the Town repeatedly denied approval of the Project. Now Alder is being fined for pre-existing code violations on 918 Park Ave. (a property Alder would not have purchased but for the Town's promises) and violations which would not exist today if the Town has timely fulfilled its promises.

41. The Town knew, or reasonably should have expected, its representations and course of conduct would induce Alder to acquire the Properties, incur substantial expense and pursue the Project in reliance on those representations.

42. In reasonable and good-faith reliance on the Town's representations, Alder acquired the seven-parcel assemblage, committed to expenditures the Town knew would exceed $15 million and prepared and repeatedly revised detailed site plans and engineering, traffic, landscape and photometric studies across successive submittals from December 2022 through July 2026.

43. After Alder incurred these obligations and satisfied each round of the Town's stated requirements, the Town repudiated its representations by refusing to approve the Project, imposing new and escalating conditions each time Alder complied and declining to render a final, favorable decision.

44. Alder detrimentally and substantially changed its position in reliance on the Town's representations. Injustice can be avoided only by enforcing those representations or compensating

Alder for its reliance. This is an exceptional circumstance warranting application of promissory estoppel against the Town.

45. As a direct and proximate result of the Town's conduct, Alder has suffered damages, including its expenditures to acquire and carry the Properties and to prepare and prosecute the Project applications.

**WHEREFORE** Plaintiff ALDER AT LAKE PARK, LLC respectfully requests that this Court enter judgment against the Town:

a. Estopping the Town from denying approval of the Project on grounds Alder previously satisfied;

b. Awarding damages in an amount to be determined at trial;

c. Awarding prejudgment interest;

d. Awarding costs in accordance with FED. R. CIV. P. 54(d)(1); and

e. Granting such other and further relief as the Court deems just and proper.

## COUNT II
## AS-APPLIED REGULATORY TAKING

46. Plaintiff incorporates and realleges by reference the allegations of paragraphs 1 through 33 above as though fully set forth herein.

47. This is an action for just compensation for the taking of private property without payment of full compensation, in violation of Article X, § 6(a) of the Florida Constitution.

**Finality and Futility**

48. Alder submitted six (6) meaningful applications for development approval. While the Town’s rejection of the last application included token non-final language, such language is a sham given the Town Attorney’s actions and comments aimed at coercing Alder to give up and

sell the Properties to his preferred developer. As such, the Town has reached a final and definitive position regardless of the reservation language in its comments rendering the Project unable to be developed by Alder at any economically viable scale on the Properties.

49. Any further application to the Town would be futile. Where a governmental entity has effectively determined development will not be permitted, or where the permissible uses of the Properties are known to a reasonable degree of certainty, no further application is required, and the governmental action is treated as final.

50. Alder's claim is not barred by the fact that portions of the governing regulatory scheme predated its acquisition of the Properties because Alder acquired the full bundle of property rights, including the right to challenge the application of the Town's regulations to the Properties.

51. Alder has satisfied, or is excused from, any applicable pre-suit and administrative prerequisites to this claim and brings this claim without the necessity of first exhausting a state inverse-condemnation remedy.

52. The Town’s actions, as applied to the Properties, constitute a taking of Alder’s private property for which just compensation is due, because: (a) the economic impact of the Town’s conduct on Alder has been severe, depriving the Properties of the value attributable to its intended and reasonable foreseeable development use; (b) the Town’s conduct has unreasonably interfered with Alder’s distinct, investment-backed expectations in developing the Properties; and (c) the character of the Town’s action — a pattern of repetitive and unfair land use procedures directed at Alder and designed to prevent a final, compensable decision — weighs in favor of a taking.

53. The Town has not instituted formal eminent-domain proceedings and has not paid Alder any compensation for the taking of its property rights.

54. As a direct and proximate result of the Town's actions, Alder has suffered damages including the loss of the fair market value of the Properties attributable to its reasonable investment-backed development use, together with related expenditures, interest and costs.

**WHEREFORE** Plaintiff Alder respectfully requests that this Court:

a. Enter judgment against the Town of Lake Park determining that the Town's actions, as applied to the Properties, effect a taking of Alder's private property in violation of Article X, § 6(a) of the Florida Constitution and the Fifth and Fourteenth Amendments to the United States Constitution;

b. Award Alder full and just compensation for the Properties taken, in an amount to be determined at trial;

c. Award Alder its reasonable attorneys' fees, expert fees and costs as permitted by law, including under § 73.131, Fla. Stat., 42 U.S.C. § 1988 and FED. R. CIV. P. 54(d)(1);

d. Award prejudgment interest; and

e. Grant such other and further relief as the Court deems just and proper.

**COUNT III**
**DEPRIVATION OF PROPERTY WITHOUT**
**PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)**

55. Plaintiff incorporates and realleges by reference the allegations of paragraphs 1 through 33 above as though fully set forth herein.

56. This is a cause of action under 42 U.S.C. § 1983 for the deprivation, under color of state law, of Alder's rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

57. At all material times, the Town and its officials acted under color of the ordinances,

regulations, customs and policies of the Town and the State of Florida.

**A. Alder's Constitutionally Protected Property Interest.**

58. Alder possesses a constitutionally protected property interest — a clear entitlement — in site-plan approval of the Project and in the development rights appurtenant to the Properties.

59. That entitlement arises from Florida law and from the Town's own legislative enactments, including the Downtown Future Land Use classification, the Park Avenue Downtown District ("PADD") zoning and the Town's comprehensive plan, which together establish the objective, ascertainable criteria governing site-plan approval within the PADD.

60. The Project satisfied those objective criteria. Across successive rounds of review from December 2022 through July 2026, Alder addressed and resolved each review comment the Town identified, and the Town acknowledged numerous items as "resolved." The density Alder sought is expressly authorized: the comprehensive plan empowers the Town Commission to approve residential density above the 48-unit-per-acre base figure so long as the district-wide average is maintained.

61. Once an applicant satisfies the objective criteria fixed by the Town's comprehensive plan, PADD zoning and Land Development Code, approval of a conforming site plan is a ministerial act, and the Town lacks discretion to withhold it. Because the Project conformed, the Town had no lawful discretion to deny it.

62. The Town's assertion of an unlimited, standardless right to "revise these comments and requests, at any time . . . until final approval of the Application by the Town Commission" was not a lawful exercise of regulatory discretion. It was a device to manufacture discretion that the Town's governing enactments do not confer to defeat Alder's entitlement to approval of a conforming plan.

**B. The Town's Deprivation of Alder's Property Interest.**

63. The Town deprived Alder of its protected property interest through a process that was constitutionally inadequate. The Town subjected the Project to an open-ended, standardless review in which the Town repeatedly accepted Alder's compliance and then imposed new and escalating requirements as conditions of approval — for example, demanding a ten-foot sidewalk after Alder installed the six-foot sidewalk the Town had requested, demanding further massing revisions after Alder redesigned the building into two towers to satisfy the Town's earlier massing objections and injecting a new lift-station requirement late in the process.

64. Throughout, the Town reserved the unilateral right to revise its requirements without limit. By mid-2026, the Town admitted that it was withholding consent to develop 918 Park Ave. as "leverage" to compel Alder to conform the Project to the Town's shifting, subjective preferences.

65. The Town has in fact reached a final, adverse decision denying the Project — as the Town's own planner testified on August 17, 2026, that Alder's most recent application was rejected as a "no go." The Town has nonetheless deliberately declined to issue a final, written, reviewable order, cloaking its denial in "non-final" language to insulate its decision from review while continuing to burden the Properties.

**C. The Inadequacy and Unavailability of State Process.**

66. A procedural due process deprivation of this character cannot be remedied through the ordinary state process. Certiorari review in the circuit court is available only to review a final, written quasi-judicial decision; by deliberately withholding any final, reviewable order on the Project, the Town has deprived Alder of the predicate required to invoke that remedy.

67. The gravamen of Alder's injury is the process itself — a standardless, indefinite

review calculated never to reach a reviewable decision. No post-deprivation certiorari or mandamus proceeding can cure an injury that is defined by the Town's refusal to render the very decision that such review presupposes.

68. To the extent any state remedy is nominally available, it is inadequate and futile to redress the ongoing deprivation, because the Town has structured its conduct to avoid a final decision while simultaneously withholding approval and accruing daily code-enforcement fines against the Properties. Alder has no adequate state process by which to remedy the deprivation alleged.

**D. Municipal Liability.**

69. The Town's deprivation of Alder's property interest was undertaken by, or pursuant to the decisions of, Town officials with final policymaking authority over site-plan approval. Final authority over site-plan approval of the Project rests with the Town Commission, whose decisions on such applications are not subject to meaningful administrative review within the Town. The Town Manager and Town Attorney exercised and directed that authority with respect to the Project.

70. In the alternative, the deprivation was undertaken pursuant to an official policy or a widespread, settled custom of the Town having the force of law — namely, the Town's practice, reflected in its written review comments, of reserving the right to revise approval requirements without limit and of declining to render a final, reviewable decision on development applications.

71. That official policy or custom, and the decisions of the Town's final policymakers, were the moving force behind and the direct cause of the deprivation of Alder's constitutional rights, such that the deprivation is attributable to the Town.

72. As a direct and proximate result of the Town's deprivation of Alder's rights under

color of state law, Alder has suffered damages, including the loss of the value of its property and development rights and substantial expenditures incurred in the application process.

**WHEREFORE** Plaintiff ALDER AT LAKE PARK, LLC respectfully requests that this Court enter judgment against the Town under 42 U.S.C. § 1983 determining the Town deprived Alder of property without due process of law in violation of the Fourteenth Amendment and awarding the following to Alder:

a. Compensatory damages in an amount to be determined at trial;

b. Declaratory and injunctive relief directing the Town to cease its unlawful conduct and to render a final decision on the Project;

c. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and FED. R. CIV. P. 54(d)(1);

d. Prejudgment interest; and

e. Such other and further relief as the Court deems just and proper.

**COUNT IV**
**INJUNCTIVE RELIEF**
**(Barring Imposition and Enforcement of Code-Enforcement Fines)**

73. Plaintiff incorporates and realleges by reference the allegations of paragraphs 1 through 33 above as though fully set forth herein.

74. This is a claim for temporary and permanent injunctive relief restraining the Town from imposing, accruing or enforcing code-enforcement fines and liens against the Properties pending final adjudication of this action.

75. After Alder declined to sell the Properties to the developer favored by the Town Attorney, and immediately following a March 31 meeting, the Town issued approximately 214 pages of code-enforcement notices against the Properties. The cited conditions were longstanding

conditions on the vacant buildings — exterior paint and staining, signage, parking-lot striping and fencing — that had existed for years and had not previously been the subject of enforcement.

76. The code-enforcement proceedings were not directed at achieving legitimate code compliance. They were (and are) being pursued in bad faith and for the ulterior, collateral purpose of coercing Alder to convey the Properties, as evidenced by the Town's representation that, if Alder used the favored developer's *team*, "all problems will go away." The Town's application of its code to these vacant, slated-for-redevelopment buildings — enforcement of which would be rendered unnecessary if the Project is approved — is arbitrary, unreasonable and unconstitutional as applied to the Properties.

77. Alder is substantially likely to prevail because the Town's conduct effects a taking, inordinately burdens the Properties and violates due process. In addition, the code enforcement is being wielded in bad faith and is invalid as applied to the Properties.

78. The code enforcement fines accrue daily and, if imposed, will ripen into liens against the Properties that threaten foreclosure and cloud title to unique real property. Alder does not wish to incur liens on the Properties or to face the resulting foreclosure exposure.

79. Injury to and encumbrance of unique real property, and the threat of repeated enforcement of invalid process interfering with Alder's property rights, are injuries of a nature that cannot be adequately compensated by money damages and are therefore irreparable.

80. Alder has no adequate remedy at law. Alder has exhausted the administrative remedies available under the Town's code and Chapter 162, Fla. Stat. Further, those administrative remedies are inadequate and futile here because the enforcement is being directed in bad faith and for the collateral purpose alleged and because money damages cannot cure the encumbrance of and threat to the Properties.

81. The threatened injury to Alder from the continued accrual and enforcement of the fines far outweighs any harm to the Town from being restrained during this action, and the public interest is served by preventing the bad-faith use of code enforcement to coerce a conveyance of private property.

82. Alder has a clear legal right to the relief sought and will suffer irreparable harm absent an injunction.

**WHEREFORE** Plaintiff ALDER AT LAKE PARK, LLC respectfully requests that this Court enter a temporary and permanent injunction restraining the Town, its officers, employees and agents from imposing, accruing, assessing or enforcing any code-enforcement fines or liens against the Properties arising from the notices of violation described herein, pending final adjudication of this action, as well as grant such other and further relief, including costs, as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all matters so triable pursuant to FED. R. CIV. P. 38(b).

DATED: August 27, 2026

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
777 S. Flagler Drive, Suite 300E
West Palm Beach, FL 33401
Telephone: (561) 650-7922
Facsimile: (561) 655-6222

By: */s/ C. Wade Bowden*
**C. Wade Bowden, Esq., B.C.S.**
Fla. Bar No. 0090735
bowdenw@gtlaw.com
Tina.Chalkley@gtlaw.com
**Brian Pantaleo, Esq.**
Fla. Bar No. 99932

Pantaleo@gtlaw.com
**Beth A. Norrow, Esq.**
Fla. Bar No. 61497
Beth.Norrow@gtlaw.com
WPBLitDock@gtlaw.com
*ATTORNEYS FOR PLAINTIFF*